(93 South. 238)

## WESTERN UNION TELEGRAPH CO. v. PADGETT. (3 Div. 416.)

(Court of Appeals of Alabama. June 13, 1922.)

Telegraphs and telephones ⊜⟹54(7)—Limitation of liability binding on sender of interstate message without notice.

A provision limiting liability of a telegraph company for failure to correctly transmit an interstate unrepeated message, to the amount paid for sending the message, is valid, whether the message was written on one of the telegraph company's blanks, or whether the sender knew of the regulations or classifications.

Appeal from Circuit Court, Escambia County; A. E. Gamble, Judge.

Action by J. M. Padgett against the Western Union Telegraph Company, for damages for incorrectly transmitting a message. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Francis R. Stark, of New York City, and Rushton & Crenshaw, of Montgomery, for appellant.

Where an operator of the company writes a message on the company blanks, at the request of the sender, he becomes the agent of the sender, binding the sender to the contract. 149 Ala. 617, 43 South. 106; 163 Ala. 9, 50 South. 316; 159 Ala. 254, 48 South. 712; 102 Ark. 607, 145 S. W. 205; (Tex. Com. App.) 210 S. W. 509. The message was an unrepeated interstate message, and the court erred in its rulings on the pleading. 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 653. The application was subject to the demurrers interposed. 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 653; (Mo. App.) 198 S. W. 1132; 194 App. Div. 632, 185 N. Y. Supp. 891.

Hamilton, Page & Caffey, of Brewton, for appellee.

The company may waive by parol the provisions contained in the contract of sending. 196 Ala. 620, 72 South. 168; 149 Ala. 623, 43 South. 117; 118 Ind. 174, 20 N. E. 709. Where a compromise is made of the original claim, the parties may sue upon a new agreement, and under the facts of this case the count in assumpsit was good. 173 Ala. 568, 56 South. 216, 38 L. R. A. (N. S.) 924. Ann. Cas. 1914A, 718; 155 Ala. 281, 46 South. 477; 5 R. C. L. 901; 3 Elliott, Cont. 266; Hunt, Accord and Satisfaction, 198. The courts do not take judicial notice of the orders and opinions of the Interstate Commerce Commission. 128 Ala. 537, 29 South. 602; 222 U. S. 506, 32 Sup. Ct. 114, 56 L. Ed. 288.

MERRITT, J. The complaint on which trial was had consists of four counts, Nos. 2, 4, 5, and 6. In legal effect, counts 2 and 4 are the same. Both counts are ex contractu, based upon an alleged breach of contract by the defendant telegraph company in and about the transmission and delivery of a telegraphic message from the plaintiff's agent at Brewton, Ala., to the plaintiff, who was temporarily at National Stockyards, Ill.; said message reading as follows:

---

⊜⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Mr. Munson was over here says he wants six big mules six to eight years old and *two* cheap saddle horses."

It is alleged that, as delivered to plaintiff, the message read:

"Mr. Munson was over here says he wants six big mules six to eight years old and *twenty* cheap saddle horses"

—that in reliance upon said telegram, as delivered to him, plaintiff purchased 20 cheap saddle horses, instead of 2, as had been ordered; and that he was forced to dispose of said horses at a great loss, for which he claims damage.

Count 5 is a count in assumpsit on the common counts, claiming $1,000 due from the defendant by account on, to wit, April 1, 1918. Count 6 claimed $1,000 damages suffered by the plaintiff in and about the sale of 18 saddle horses, said damage being so caused by the failure of the defendant to correctly transmit a telegram, as set out in the first count of the complaint, which was expressly referred to and made a part of count 6; the plaintiff averring in said count 6 that the defendant had agreed to pay said damages so suffered by plaintiff prior to the commencement of the suit.

In addition to the general issue, the defendant filed pleas Nos. 4, 5, 6, A, and B to counts 2 and 4, separately and severally; said pleas setting up in various ways that the telegraphic message described in the complaint was an unrepeated interstate message; that under the defendant's established rules, regulations, tariffs, and classifications, as the same were on file with the Interstate Commerce Commission, the defendant was not liable for mistakes or delays in the transmission or delivery of an unrepeated message beyond the amount received for sending the same; that the amount received for the transmission and delivery of said message was 50 cents—wherefore defendant claimed it was only liable for said sum, with interest thereon. As originally filed, pleas 4, 5, and 6 averred that the message "was in writing on one of the regular forms or blanks used by the defendant." Demurrers having been sustained to these three pleas, the defendant amended them by striking out the words "in writing," and inserting in lieu thereof "written by the agent of the sender thereof." As thus amended, demurrers to pleas 4, 5, and 6 were overruled.

The defendant filed two special pleas, C and D, to counts 5 and 6 of the complaint, separately and severally. In plea C it is alleged that the only transaction the defendant had with the plaintiff on or about the date mentioned in counts 5 and 6 was the sending of a telegram on or about January 16, 1918, by plaintiff's agent to plaintiff, as set out in the first count of the complaint.

After averring that said message was an interstate unrepeated message under the defendant's classifications, rules, and tariffs as the same were on file with the Interstate Commerce Commission on the date of the sending of said message, said plea avers:

"That, subsequently to the sending of said message, defendant's agent undertook an investigation of plaintiff's claim for damages on account of an alleged error made in the transmission of said message, and plaintiff's claim is based on an alleged agreement of said agent to pay plaintiff said damages, but defendant says that said agent was unauthorized to make such an agreement, and that, as said message was an interstate message, any waiver of any defense which defendant had to such claim was unauthorized and illegal, under the act of Congress relating to interstate communications by telegraph."

Demurrers to this plea were sustained. Substantially the same defense to counts 5 and 6 is set up by plea D, except that said plea goes more into detail than plea C.

The plaintiff filed a special replication to pleas 4, 5, 6, and B as amended, averring that the terms and conditions of the telegram set out in the said pleas were made for the benefit of the defendant, and that the defendant, through its agent, S. G. Bentley, manager of the company at Mobile, Ala., waived said conditions, in that, after the error in the message was discovered by plaintiff, and before the horses had arrived at their destination, the plaintiff notified the telegraph company of the error, and thereupon the defendant's said agent came to Brewton to adjust the loss, and agreed with plaintiff that, if plaintiff would sell the horses at the best prices obtainable, the defendant company would, upon receipt of an itemized statement, pay plaintiff for the damages sustained by him on account of the erroneous transmission of the message; the replication averring that plaintiff proceeded to dispose of the horses to the best advantage, and had duly rendered the defendant an itemized account showing his loss.

To this special replication the defendant filed demurrers, to the effect that, as shown by the complaint and the pleas, the telegraphic message involved was an interstate message, and as such interstate commerce, and, under the laws of Congress regulating and controlling interstate commerce, a common carrier subject to the provisions of such laws cannot waive any defense which it may have, or estop itself from claiming the protection of the provisions of the contract affecting the rates charged for the service. The defendant's demurrers to the special replication were overruled.

The trial of this cause was had on March 8, 1921; consequently the trial court did not have the benefit of the decision of the

Supreme Court of the United States in the case of Western Union Telegraph Co. v. Esteve Bros. & Co., 256 U. S. 566, 41 Sup. Ct. 584, 65 L. Ed. 1094, decided June 1, 1921, which seems to be decisive of the questions involved here. By this decision the provision limiting liability in the case of an unrepeated message is binding and valid on all parties to the contract, whether or not the message is written on one of the defendant's blanks, or whether the sender had any knowledge of the regulations or classifications; consequently pleas 4, 5, 6, A, and B, as originally filed, were good, and the court erred in sustaining demurrers thereto. Kyle v. W. U. T. Co. (Neb.) not reported.

The court's action in sustaining demurrers to defendant's pleas C and D, and in overruling defendant's demurrers to plaintiff's special replications No. 2 to pleas 4, 5, 6, and B, as amended, raise the question as to whether or not an agreement made by defendant's agent, Bentley, after the discovery of the error made in the transmission of the message, to pay plaintiff whatever damage he may have sustained by reason thereof, is valid and binding on the telegraph company. The reasoning in the ruling in the case of Cultra v. Western Union Telegraph Co., 61 Interst. Com. Com'n R. 541, decided by the Interstate Commerce Commission May 3, 1921, considered in the light of Western Union Telegraph Co. v. Esteve Bros., supra, and as applied to the facts in the instant case, appears to be conclusive, also, that the rulings of the trial court in this respect was erroneous. See, also, the following cases: Chicago & Alton Railroad Co. v. Kirby, 225 U. S. 155, 32 Sup. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501; Armour Packing Co. v. U. S., 209 U. S. 57, 72, 28 Sup. Ct. 428, 52 L. Ed. 681; Kerns v. Western Union Telegraph Co. (Mo. App.) 198 S. W. 1132.

For the errors pointed out, the judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.